No. 89-153

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

IN RE THE APPLICATION FOR
PRODUCTION OF POLICE RECORDS
RE: MICHAEL LACY.

ALLSTATE INSURANCE CO.,

              Applicant/Appellant,

     -vs-

CITY OF BILLINGS,

              Respondent.

_____

APPEAL FROM: District Court of the Thirteenth Judicial District,
           In and for the County of Yellowstone,
           The Honorable Robert Holmstrom, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Janice L. Rehberg; Crowley, Haughey, Hanson, Toole and
        Dietrich, Billings, Montana

    For Respondent:

        Paul Luwe, City Attorney's Office, Billings, Montana

_____

Submitted on Briefs: Aug. 10, 1989

Decided: September 27, 1989

Filed:

_____
              Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from an order denying appellant, Allstate Insurance Company's (Allstate) application for an order directing the Billings Police Department (Department) to release to Allstate copies of its records relating to Michael Lacy, Allstate's insured. We reverse and remand.

The sole issue in this case is:

Whether the District Court erred in denying Allstate's application for the production of police records pertaining to the Billings Police Department's investigation into the death of Allstate's insured, Michael Lacy, for use during the insurance company investigation of policy coverage.

On January 11, 1988, Michael Lacy (Lacy) submitted an application to Allstate for a $130,000 life insurance policy. In the application, Lacy responded negatively to questions concerning prior use of illegal drugs, treatment for Acquired Immune Deficiency Syndrome (AIDS) and the presence of any mental or physical disorders. Based upon these representations, a policy was issued covering the life of Lacy. The policy was to be owned by and payable to Donn Cornelia.

Lacy died on September 5, 1988, at the War Bonnet Inn in Billings, Montana. The police were called to investigate his death. Upon arriving at the scene, the police found used syringes, quantities of white powder and other substances believed to be illegal drugs. The coroner's report revealed that Lacy was a frequent drug user, that there was evidence of "recent and old" intravenous drug use, and that Lacy tested positive for HIV (the AIDS virus). The report determined that Lacy died of an intravenous drug overdose.

Because there was inconclusive evidence to support a finding of suicide, the coroner termed Lacy's death

2

accidental. Allstate believes, however, that further investigation may reveal that the death was, in fact, suicidal. Acting upon this belief and the circumstances surrounding the death, Allstate made a request to the Billings Police Department, to allow it access to files prepared during investigation of the incident. Allstate believes that the records may assist it in determining whether Lacy made misrepresentations in his application which would preclude the beneficiary from recovering any of the proceeds.

In order to comply with the Department's interpretation of the Montana Criminal Justice Information Act, Allstate filed an application with the District Court seeking production of police records concerning the death of Michael Lacy. The Department objected to the general release of its records and requested the court to conduct an in camera review in order to decide which evidence should properly be released to Allstate. The Department also sought a protective order to limit further dissemination of any information released to Allstate. Allstate did not object to any of these conditions, and in fact drafted a proposed protective order.

The District Court, however, denied Allstate's application. It held that Allstate was not authorized by law to receive the documents and was not, therefore, entitled to their production under the Criminal Justice Information Act. Allstate appealed the lower court's ruling.

In any free society there is tension between competing rights allocated among the citizens. This tension is apparent when the right of personal privacy collides with society's right to know relative to governmental operation. Because these two rights have been constitutionalized, this dilemma has been intensified in Montana.

3

The 1972 Montana Constitution elevated the right to privacy and the right to know to constitutional status. The right to privacy is found at Article II, Section 10, which provides:

> The right of individual privacy is essential to the well being of a free society and shall not be infringed without the showing of a compelling state interest.

The right to know is found at Article II, Section 9, which states:

> No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

As the language of the right to know provision indicates, the tension between these two guarantees is aggravated by the fact that they are textually interdependent. In general, all citizens have an absolute right to observe and examine the operation of agencies within government. Curtailment of this right is only justified "in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure."

An easy solution which would provide concrete and uniform guidance in the balancing of these two guarantees has evaded both the courts and the legislature. The legislature has attempted to more clearly define and set the boundaries of the two rights. Of interest to this case is the Criminal Justice Information Act, which governs the dissemination of confidential criminal justice information. See, § 44-5-101, MCA, et seq.

4

Section 44-5-103(3), MCA, defines confidential criminal information as:

a)  criminal investigative information
b)  criminal intelligence information
c)  fingerprints and photographs
d)  criminal justice information or records made confidential by law, and
e)  any other criminal justice information not clearly defined as public criminal justice information.

One of the purposes of the act is to "establish effective protection of individual privacy in confidential and nonconfidential criminal justice information collection, storage and dissemination." Section 44-5-102, MCA. Obviously in certain situations investigatory material must be shielded from public review. Victims of sex crimes, for example, may have a legitimate expectation of privacy. On the other hand, suspects may have such an expectation in certain circumstances because criminal investigations occasionally result in the designation of the innocent as suspects, particularly in the early stages of investigation. See 42 Op.Att'y Gen. No. 119 at 7 (1988).

The legislature, therefore, in balancing the right of society to know of the existence and treatment of crime and the individual's right to privacy, provided guidelines which dictate when this information would be subject to dissemination. Section 44-5-303, MCA, provides that "dissemination of confidential criminal justice information is restricted to criminal justice agencies or to those authorized by law to receive it." (Emphasis added.)

The trial court interpreted this statute to mean that in order to be "authorized by law," one must be specifically authorized by statute to receive criminal justice information. Because Allstate could not point to any statute

which authorized insurance companies to receive criminal justice records, it was precluded from obtaining them. This interpretation does not take into consideration basic tenants of our constitutional system of government and statutory construction. The office of ultimately interpreting the Constitution lies exclusively in the judiciary. State v. Toomey (1959), 135 Mont. 35, 44, 335 P.2d at 1051, 1056.

The trial court's opinion requiring statutory authorization for release of confidential criminal justice information effectively delegates to the legislature the authority to place binding construction upon the State Constitution. However, its provisions control the legislature, not vice versa. While the legislature is free to pass laws implementing constitutional provisions, its interpretations and restrictions will not be elevated over the protections found within the Constitution.

As we stated earlier the dissemination of confidential criminal justice information is restricted to criminal justice agencies or to those authorized by law to receive it. Section 44-5-303, MCA, (Emphasis added.) The trial court held that in order to be "authorized by law," one must be specifically authorized by statute. We find that this reading of § 44-5-303, MCA, is too narrow.

Words utilized in a statute are to be given their natural, plain, ordinary and commonly understood meaning. State v. Perez (1952), 126 Mont. 15, 22, 243 P.2d 309, 312. Under its commonly understood meaning the word "law" includes constitutional as well as statutory law. See §§ 1-1-101 and -102, MCA, State ex rel. Burns v. Lachlen (1955), 129 Mont. 243, 284 P.2d 998. Accordingly, one is "authorized by law" to receive criminal justice information by the Right to Know provision of the Constitution. The only limitation on the

6

right to receive this information is the constitutional right to privacy.

This conclusion is further bolstered by our finding that the "Right to Know" as contained in Article II, Section 9 of the Montana Constitution, is a self executing provision. A provision of a constitution is self executing when legislation is not required to give it effect. State ex rel. Stafford v. Fox-Great Falls Theater Corp. (1942), 114 Mont. 52, 74, 132 P.2d 689, 700. The clear language contained within Article II, Section 9, indicates that there was no intent on the part of the drafters to require any legislative action in order to effectuate its terms.

The legislature does not have the power to provide through the passage of statute who can exercise this right unless it finds that such curtailment is necessary to protect the right of individual privacy. Accordingly, any interpretation of § 44-5-303, MCA, which requires specific legislative authorization to review criminal justice information would render the statute unconstitutional. In determining the meaning of a statute, this Court will construe its terms in a manner which will preserve its constitutionality. Parker v. Yellowstone County (1962), 140 Mont. 538, 543, 374 P.2d 328, 330.

Because the judiciary has authority over the interpretation of the Constitution, it is the courts' duty to balance the competing rights at issue in order to determine what, if any information, should be given to a party requesting information from the government. In view of the policies behind the Criminal Justice Information Act, it is incumbent upon a party to make a proper showing in order to be eligible to receive such specific confidential information. It appears Allstate has met this initial burden. Therefore, on remand the District Court shall

7

conduct an _in camera_ inspection of the documents at issue in order to determine what material could properly be released to Allstate. In making this examination, the court shall take into account and shall balance the competing interests of those involved.

Allstate should be accorded the widest breadth of information possible. However, its request should be reviewed with deference towards the privacy rights of those named in the police records. Any release of information, of course, can be conditioned upon limits contained within a protective order. This case is remanded and the trial court is instructed to conduct proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

8