No. 98-273

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 298

LINCOLN COUNTY COMMISSION,

Plaintiff and Appellant,

v.

RAY NIXON, Lincoln County Sheriff, JOE MAZUREK,

Montana Attorney General, ARLYN GREYDANUS, Montana

Division of Criminal Investigation, and any other Interested

Person or Entity,

Defendants and Respondents

APPEAL FROM: District Court of the Nineteenth Judicial District,

In and for the County of Lincoln,

The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Amy N. Guth, Attorney at Law, Libby, Montana

For Respondents:

Hon. Joseph P. Mazurek, Attorney General; Melanie A. Symons,

Assistant Attorney General; Helena, Montana

Submitted on Briefs: August 6, 1998

Decided: December 8, 1998

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶1. Plaintiff Lincoln County Commission filed this action in the District Court for the Nineteenth Judicial District in Lincoln County, Montana, for the release of investigative material held by the defendant Lincoln County Sheriff and the Criminal Investigation Bureau of the Montana Department of Justice (CIB). The District Court issued an order in which it denied the Commission's request for a hearing, denied the Commission's request for dissemination of the investigative material, and denied the Commission's request for fees and costs. The District Court then dismissed the complaint and application for release of investigative materials with prejudice. The Commission appeals from that order. We reverse and remand.**

**¶2. The dispositive issue on appeal is:**

**¶3. Did the District Court err when it dismissed the Commission's application without conducting an evidentiary hearing or *in camera* review?**

**FACTUAL BACKGROUND¶4. On March 31, 1998, the members of the Commission were informed that they were the targets of an investigation initiated by the office of the Lincoln County Sheriff. The investigation related to the allegedly improper use of county funds for mileage and meal expenses.**

**¶5. Detective Craig Martin, then in charge of the investigation, took the statement of Commissioner Larry Dolezal on April 1, 1998. The detective assured Dolezal that a copy of the statement would be made available to him. The next day, Dolezal requested a copy of his statement from the Sheriff's Office. On April 3, 1998, Lincoln County Attorney Bernard Cassidy informed Detective Martin that, due to potential conflicts of interest, the investigation should be turned over to the CIB.**

**¶6. On April 6, 1998, a newspaper article was published which revealed details of the investigation. A follow-up article appeared two days later. According to the**

newspaper, an "unidentified spokesman from the Lincoln County Sheriff's Office" provided the information for the articles. Two other area newspapers subsequently revealed that they had also been approached by an "unidentified spokesman from the Lincoln County Sheriff's Office."

¶7. The Lincoln County Sheriff advised Dolezal and the Commission on April 7, 1998, that the investigative materials were unavailable because they had been turned over to the CIB. On April 14, 1998, the CIB informed the Commission that because the investigation was ongoing, the materials would not be released.

¶8. The Commission filed the underlying complaint and application in this matter on April 23, 1998. The complaint alleged that based on Article II, Section 9, of the Montana Constitution, the Commission was entitled to examine the investigative file. The Commission then scheduled an evidentiary hearing for May 20, 1998.

¶9. In response, the CIB asserted that the investigative file contained confidential information, the release of which would compromise both the investigation and the privacy interests of informants and witnesses. The CIB included an affidavit from the principal agent assigned to the investigation which stated that the agent believed that the investigation would be compromised by the disclosure of the identities of "informants, witnesses or victims," or the information they provided.

¶10. The District Court canceled the hearing. The Commission then renewed its request for an evidentiary hearing and requested in the alternative that the District Court conduct an *in camera* inspection of the investigative file.

¶11. The District Court denied the requests, denied the application for dissemination of the investigative materials, and dismissed the complaint with prejudice.

## DISCUSSION

¶12. Did the District Court err when it dismissed the Commission's application without conducting an evidentiary hearing or *in camera* review?

¶13. Our standard of review for a district court's conclusions of law is whether the court's interpretation of the law is correct. *See Bozeman Daily Chronicle v. City of Bozeman* (1993), 260 Mont. 218, 222, 859 P.2d 435, 437.

¶14. **Article II, Section 9, of the Montana Constitution, provides:**

No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

¶15. **The "right to know" is not an absolute right. It is balanced by the "demand of individual privacy," a right which is also guaranteed by Montana's Constitution: "The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest." Art. II, Sec. 10, Mont. Const.**

¶16. **A constitutionally protected privacy interest exists when a person has a subjective or actual expectation of privacy which society is willing to recognize as reasonable.** *See Montana Human Rights Div. v. City of Billings* **(1982), 199 Mont. 434, 440-41, 649 P.2d 1283, 1287.**

¶17. **In addition to the relevant provisions of the Montana Constitution, the dissemination of criminal justice information is addressed by the Criminal Justice Information Act.** *See* **§§ 44-5-101 to -515, MCA.**

¶18. **Section 44-5-103(3), MCA, defines confidential criminal information to include criminal investigative information. Information collected by a state agency, such as the Lincoln County Sheriff's Office or the CIB, during a criminal investigation is therefore included within the definition of confidential criminal information.**

¶19. **Section 44-5-303, MCA, sets forth the restrictions on the release of confidential criminal information:**

[D]issemination of confidential criminal justice information is restricted to criminal justice agencies, to those authorized by law to receive it, and to those authorized to receive it by a district court upon a written finding that the demands of individual privacy do not clearly exceed the merits of public disclosure.

¶20. A person is "authorized by law" to receive confidential criminal justice information pursuant to Article II, Section 9, of the Montana Constitution. *See Allstate Ins. Co. v. City of Billings* (1989), 239 Mont. 321, 325, 780 P.2d 186, 188. We reaffirmed this holding in *Bozeman Daily Chronicle*, 260 Mont. at 224, 859 P.2d at 439.

¶21. In *Allstate*, an insurance company sought access to law enforcement investigative files which contained information related to the death of one of its insureds. We held that the right to know permitted the insurance company access to the widest breadth of information possible, tempered only by the privacy rights of those identified in the investigative materials.

¶22. Our decision in *Allstate* included the following language:

Because the judiciary has authority over the interpretation of the Constitution, it is the courts' duty to balance the competing rights at issue in order to determine what, if any, information, should be given to a party requesting information from the government.

*Allstate*, 239 Mont. at 326, 780 P.2d at 189.

¶23. In *Bozeman Daily Chronicle*, a newspaper sought access to the investigative file of a police officer who was accused of committing sexual intercourse without consent. We held that while the newspaper was authorized by law to gain access to portions of the investigative file, the victim and witnesses had an expectation of privacy which clearly exceeded the merits of public disclosure. We concluded that the proper method of giving effect to the rights of all parties involved was for the district court to conduct an *in camera* inspection of the investigative file in order to determine what material could properly be released. *See Bozeman Daily Chronicle*, 260 Mont. at 229, 859 P.2d at 442. *See also Allstate*, 239 Mont. at 326, 780 P.2d at 189.

¶24. We also balanced the public's right to know against individual privacy rights in *Engrav v. Cragun* (1989), 236 Mont. 260, 769 P.2d 1224, wherein we affirmed a district court decision that the demands of individual privacy outweighed the right of a member of the public to gain access to, and then to disseminate, various types of confidential criminal information. In *Engrav*, a student sought the names of all

persons arrested in Granite County during a particular calendar year, the investigative files of those persons, the pre-employment investigative files of the law enforcement officers, and the daily telephone logs of the Sheriff's Office. We held that the defendants, witnesses, informants, victims, and officers identified in the materials had privacy interests which outweighed the public's right to know, particularly in light of the fact that much of the information the student sought could be acquired in statistical form, without compromising individual privacy interests. *See Engrav*, 236 Mont. at 267, 769 P.2d at 1228-29.

¶25. Here, the only privacy interest identified is that of the Commission, the same party which seeks the release of the investigative file. The CIB contends that its witnesses and informants also have a subjective or actual expectation of privacy that society is willing to recognize as reasonable. The Commission's right to know and the privacy interests of witnesses and informants identified in the investigative materials are potentially at odds. Therefore, the Constitution and our prior case law require that the District Court balance these competing rights.

¶26. While we agree that participants in the investigation may have privacy interests which outweigh the Commission's right to view the investigative file, the record in this case does not demonstrate that the District Court undertook an analysis of the privacy interests of the parties involved, nor a balancing of those interests against the Commission's right to know. This is what the Constitution and our prior case law require.

¶27. The CIB has asserted individual privacy rights in the materials sought by the Commission. Without an inspection of the investigative file, the District Court could not have determined the existence or extent of the privacy rights held by unidentified individuals, which must be known in order to balance those rights against the right to know. "A review of such documents is . . . essential in determining whether or not the privacy interests of the . . . witnesses can be protected while disseminating the remainder of the information." *Bozeman Daily Chronicle*, 260 Mont. at 229, 859 P.2d at 442.

¶28. We conclude that in order to balance the respective rights of the parties where an assertion of privacy interests in confidential information sought by a member of the public is made, a district court should conduct an *in camera* review of the documents or information sought. Only then can it properly balance the respective

rights of the parties and protect both rights to the greatest extent possible.

**¶29. Accordingly, we reverse the order of the District Court dismissing the Commission's complaint and request for the release of investigative materials. We remand to the District Court with instructions to conduct an *in camera* inspection of the investigative file in order to determine what material can be released to the Commission. The CIB and the Sheriff should be given the opportunity to demonstrate why all or portions of the documents should not be released, and the District Court should provide for the release of as much information as possible to the Commission, while maintaining the privacy rights of any witnesses or informants. To the extent the District Court deems it necessary to protect those interests, the release of investigative information should be limited by protective order.**

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

Justice James C. Nelson specially concurs.

**¶30. I concur in our opinion as far as it goes. I would go further, however. First, to the extent that the District Court determines that any State agency or agent provided, "leaked" or otherwise made available investigative material and information to the media or to the public, then I would require that <u>all</u> the same**

material and information, without qualification, be made available to the Commission regardless of whether such material or information constitutes confidential criminal justice information and regardless of whether such material or information contains the identities of "informants, witnesses or victims."

¶31. Quite simply, the State cannot have it both ways. If the material and information at issue is, in fact, criminal justice information, confidential or otherwise, then it is subject to the various rules, protections and requirements of Title 44, Chapter 5, the Montana Criminal Justice Information Act of 1979 (Act). To the extent that such material and information should not have been made available in the first place to the public or to the media under and absent compliance with the Act, then the State should be estopped from now, after the fact, claiming that the material and information is subject to the Act's protections. Once the information has been wrongfully released, the damage to privacy rights has been accomplished and the investigation has been compromised. The bell cannot be un-rung; all that is left is to punish those individuals and agencies which violated the Act and to compensate those individuals whose privacy rights were violated.

¶32. Second, if the District Court determines that the Commission is entitled to any or all of the material and information at issue, then I would require that the court award the Commission its costs and reasonable attorney fees incurred in its action, in this appeal and on remand. Section 2-3-221, MCA; *Bozeman Daily Chronicle v. Police Dept.* (1993), 260 Mont. 218, 230-32, 859 P.2d 435, 442-44.

/S/ JAMES C. NELSON