No. 93-487

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN THE MATTER OF THE INVESTIGATIVE
RECORDS OF THE CITY OF COLUMBUS
POLICE DEPARTMENT:

CYNTHIA GAUSTAD, as the parent
and next friend of M.G.,

Petitioner and Appellant,

-vs-

CITY OF COLUMBUS,

Respondent and Respondent.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Stillwater,
The Hon. Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jeffrey T. Renz; Jeffrey T. Renz & Associates,
Missoula, Montana

For Respondent:

Douglas D. Howard; Heard & Howard, Columbus
Montana

**FILED**

JUN 27 1994

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:   March 3, 1994

Decided:   June 27, 1994

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Cynthia Gaustad (Gaustad) appeals from an order of the Thirteenth Judicial District Court, Stillwater County, denying her motion for attorney's fees pursuant to § 2-3-221, MCA, after she prevailed in obtaining the inspection of an investigative file held by the City of Columbus. We vacate and remand.

On February 19, 1992, Gaustad's minor son allegedly was assaulted by an adult in the Columbus Elementary School. While investigating the alleged assault, the City of Columbus Police Department (the City) interviewed more than a dozen witnesses.

Gaustad filed a petition in the District Court pursuant to both Article II, Section 9, of the Montana Constitution and the Criminal Justice Information Act. She sought release of the information in the City's investigatory file and an award of attorney's fees. Following an in camera inspection, the District Court allowed Gaustad to view and copy the file; it did not respond to her request for attorney's fees. Gaustad then moved for an award of attorney's fees pursuant to § 2-3-221, MCA. The court denied the motion.

Section 2-3-221, MCA, provides that "[a] plaintiff who prevails in an action brought in district court to enforce his rights under Article II, section 9, of the Montana constitution may be awarded his costs and reasonable attorneys' fees." This Court determined in Associated Press v. Board of Pub. Educ. (1991), 246 Mont. 386, 804 P.2d 376, that, in cases successfully litigated under Article II, Section 9, an award of attorney's fees pursuant

2

to § 2-3-221, MCA, is within the court's discretion. Associated Press, 804 P.2d at 380. We reiterated this determination in Bozeman Daily Chronicle v. City of Bozeman Police Dep't (1993), 260 Mont. 218, 230, 859 P.2d 435, 442.

In Associated Press, this Court reviewed a district court's award of attorney's fees and concluded that because the public benefited from the litigation, an award of attorney's fees using public funds "spread the cost of the litigation among its beneficiaries" and was not an abuse of the district court's discretion. Associated Press, 804 P.2d at 380. Gaustad characterizes this language to mean that fees should be awarded as a matter of course to spread the costs of enforcing Article II, Section 9, of the Montana Constitution. To this end, Gaustad urges this Court to hold that § 2-3-221, MCA, requires the district court to award attorney's fees to the prevailing party in a suit brought under Article II, Section 9, of the Montana Constitution. We decline to do so.

In construing the meaning of a statute, we presume "that the terms and words used were intended to be understood in their ordinary sense." In re Woodburn's Estate (1954), 128 Mont. 145, 153, 273 P.2d 391, 394-95. The word "may" is commonly understood to be permissive or discretionary. See In re Minder's Estate (1954), 128 Mont. 1, 9-10, 270 P.2d 404, 409. In contrast, "shall" is understood to be compelling or mandatory. See Abshire v. School Dist. (1950), 124 Mont. 244, 245, 220 P.2d 1058, 1059.

Gaustad's argument that § 2-3-221, MCA, requires the District

3

Court to award attorney's fees is premised on the interpretation that "may" is mandatory rather than permissive. She cites to several cases where this Court interpreted "may" to be mandatory. Each of those cases interpret statutes other than § 2-3-221, MCA, and are distinguishable on a factual basis. Furthermore, each case involved an examination of the policies underlying the individual statutes and, in some cases, the legislative history of the statute. Based on that examination, this Court concluded that the only reasonable interpretation was that the duties imposed by the statute were mandatory. See Bascom v. Carpenter (1952), 126 Mont. 129, 246 P.2d 223. The legislative history of § 2-3-221, MCA, however, does not support such an interpretation.

The legislature originally passed House Bill 531, later codified as § 2-3-221, MCA, with mandatory "shall" language. Governor Thomas Judge returned the bill unsigned, recommending that the legislature replace the mandatory language of the bill with language placing the award of attorney's fees within the district courts' discretion. 3 House Journal 1553 (1975). In response, both the House and the Senate amended H.B. 531 to include the permissive "may." 3 House Journal 1597 (1975), 3 Senate Journal 1546 (1975). The amended version was submitted for Governor Judge's approval on April 19, 1975. 3 House Journal 1790 (1975). Governor Judge signed H.B. 531, as amended, on April 21, 1975. 1975 Mont. Laws 1303. Thus, the clear intent of the statute is that an award of attorney's fees is discretionary and the legislative history of § 2-3-221, MCA, precludes an interpretation

4

that the statute is mandatory.

Moreover, the legislature may amend a statute at any time. We presume that the legislature is aware of the existing law, including our decisions interpreting individual statutes. In re Wilson's Estate (1936), 102 Mont. 178, 194, 56 P.2d 733, 737. The legislature has met in regular session since our decision in Associated Press. We presume that if the legislature disagreed with our interpretation that § 2-3-221, MCA, was discretionary, it would have amended the statute accordingly. It did not do so.

For these reasons, it would be inappropriate to modify our interpretation that an award of attorney's fees pursuant to § 2-3-221, MCA, lies within the discretion of the district court. We conclude that such an award is discretionary rather than mandatory.

We review a district court's discretionary rulings for abuse of discretion. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 603-04. We previously have concluded that, in certain cases, a district court's outright denial of a motion without a sufficient rationale for its action is not an exercise of discretion, but is an abuse of that discretion. See Gursky v. Parkside Professional Village (1992), 258 Mont. 148, 152, 852 P.2d 569, 571.

The District Court's order contains a bare denial of Gaustad's motion for attorney's fees pursuant to § 2-3-221, MCA; it is devoid of any explanation or rationale for its decision. This bare denial renders our review for abuse of discretion difficult. Moreover, the court's order demonstrates that it was uncertain whether § 2-3-

5

221, MCA, applied in cases such as this where a private individual obtains the release of criminal justice information. Two weeks after the District Court's order, we determined that § 2-3-221, MCA, is applicable in cases seeking the release of criminal justice information under Article II, Section 9, of the Montana Constitution. Bozeman Daily Chronicle, 859 P.2d 435, 442-43.

We conclude that a remand is appropriate here in light of the District Court's bare denial of Gaustad's motion and the availability of Bozeman Daily Chronicle to clarify the applicability of § 2-3-221, MCA, to this case. On remand, the District Court is directed to include its rationale in granting or denying the motion.

Vacated and remanded.

We concur:

_____
Chief Justice

_____

_____
Justices

_____
Justice

6

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

The majority relies on its decisions in *Associated Press v. Board of Public Education* (1991), 246 Mont. 386, 804 P.2d 376, and *Bozeman Daily Chronicle v. City of Bozeman Police Department* (1993), 260 Mont. 218, 859 P.2d 435, for the proposition that an award of attorney fees pursuant to § 2-3-221, MCA, is discretionary. However, the precise issue presented by this case was not before this Court in either of the cases relied upon. In both cases, attorney fees were awarded and the public entity argued on appeal that they should not have been awarded because it had acted in good faith. However, this Court affirmed the award of attorney fees for the reason that the cost of litigation which is beneficial to the public should be spread among all of its beneficiaries. Attorney fees were referred to as discretionary. However, there was no analysis of the language used in the statute, nor any discussion of why an award of attorney fees pursuant to the statute was permissive, rather than mandatory.

The majority concludes that when construing a statute we must apply terms and words as they are ordinarily understood, and that "may" is commonly understood to be permissive or discretionary. However, we have a long history of cases in this State where the term "may" has been construed to provide a mandatory directive to the court or public official vested with authority to act. *See, e.g., Bascom v. Carpenter* (1952), 126 Mont. 129, 136, 246 P.2d 223, 226, where we pointed out that:

7

In *Simpson v. Winegar*, 122 Or. 297, 258 P. 562, 563, the court said: "It is well settled that, where even the word 'may' is used, and the rights of the public or of a third party are affected, the language is mandatory, and must be strictly obeyed. In *Kohn v. Hinshaw*, 17 Or. 308, 311, 20 P. 629, 631, Mr. Justice Strahan said: '. . . It is a general principle in statutory construction that, where the word "may" is used in conferring power upon an officer, <u>court</u>, or tribunal, and the public or a third person has an interest in the exercise of the power, then the exercise of the power becomes imperative.'" [Emphasis added].

We have construed the term "may" when used in statutes to be imperative or mandatory and the equivalent of "shall" or "must" as long ago as 1901 in our decision in *Montana Ore Purchasing Company v. Lindsay* (1901), 25 Mont. 24, 27, 63 P. 715, 716. We have consistently so held, wherever appropriate, in subsequent cases. *See State ex rel. Stiefel v. District Court* (1908), 37 Mont. 298, 96 P. 337; *State ex rel. Case v. Bolles* (1925), 74 Mont. 54, 238 P. 586; *Thomas v. Cloyd* (1940), 110 Mont. 343, 100 P.2d 938; *Hanson v. City of Havre* (1941), 112 Mont. 207, 114 P.2d 1053.

Sure, these cases involve different facts and different statutes. If they did not, we would not need to decide this case. However, the majority has ignored prior decisions of this Court where statutes which provided that a trial court "may" award attorney fees to a prevailing party were interpreted to require that attorney fees be awarded without any discretion on the part of the trial court. *See Walker v. H. F. Johnson, Inc.* (1978), 180 Mont. 405, 591 P.2d 181; *Catteyson v. Glacier General Assurance Co.* (1979), 183 Mont. 284, 599 P.2d 341.

8

It is also true that legislative intent is one factor to consider when interpreting the statute. However, legislative purpose must also be considered. For example, in *Montana Ore Purchasing Company*, 63 P. at 716, we also held that:

> [T]he word is interpreted to mean "shall" or "must" whenever the rights of the public or of third persons depend upon the exercise of the power or performance of the duty to which it refers.

In this case, and in all cases where a citizen of Montana petitions for the disclosure of public records pursuant to his or her right granted in Article II, Section 9, of the Montana Constitution, and where a district court or this Court concludes that the right to information has been withheld, that person has performed a service for the State, and all other citizens in the State, by enforcing a part of our Constitution which would otherwise be violated. The degree of good faith with which the Constitution is violated is irrelevant.

The expense of this service, which is of benefit to everyone because our Constitution is reinforced and strengthened, should not and cannot be born solely by that individual who takes the initiative to compel a public official to perform his or her duty. There may be little economic incentive to do so, yet the public's right to know is priceless.

In this case, for example, the filing fees to a successful party are $135, and other costs and attorney fees approached $1000. When those kind of costs are necessarily incurred to enforce a constitutional right, how can it be argued that the rights of the public do not depend upon the district court's exercise of its

9

power to reimburse the person who, at his or her own expense, has breathed life into the Constitution?

For these reasons, I would reverse the order of the District Court and hold that the language in § 2-3-221, MCA, which authorizes an award of attorney fees, is directive or mandatory and not discretionary or permissive.

I do, however, concur with the majority that if the District Court had discretion to deny attorney fees, that discretion was abused in this case. The thrust of its rationale for denying attorney fees is that they are inappropriate where documents are requested under the Criminal Justice Information Act. That issue was resolved to the contrary in the *Bozeman Chronicle* case. If the District Court had any other basis for exercising its discretion by denying an award of attorney fees in this case, that basis is not set forth in its order, and I find none from my review of the record.

_____
Justice

10

June 27, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Jeffrey T. Renz
JEFFREY T. RENZ & ASSOCIATES
201 Westview
Missoula, MT 59803

Douglas D. Howard
HEARD & HOWARD
P. O. Box 926
Columbus, MT 59019

John K. Addy
MATOVICH, ADDY & KELLER, P.C.
2812 First Avenue North
Billings, MT 59101

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy