JUSTICE NELSON,
concurring in the result but dissenting from the reasoning.
¶36 I concur in the Court’s decision to reverse the District Court and remand for entry of an order directing removal of Joukova’s culvert *14 and rock bridge. Opinion, ¶ 30. As to the remainder of the Court’s Opinion, however, I respectfully, but strenuously, dissent.
¶37 Resolution of this case involves nothing more than a straightforward application of a clear and unambiguous statute, which states that “[n]o person may encroach upon or otherwise impair any easement for a canal or ditch used for irrigation or any other lawful domestic or commercial purpose, including carrying return water.” Section 70-17-112(2), MCA. There is no need for the Court’s lengthy excursion into caselaw-most of which does not even involve ditch easements4n order to resolve the question before us. More to the point, there is no justification whatsoever for the Court’s outright refusal to apply a controlling statute according to its plain language.
¶38 The majority boldly rewrites § 70-17-112(2), MCA, so that the statute’s clear and unqualified prohibition, ‘ho person may encroach upon or otherwise impair any easement for a canal or ditch,” now reads: ‘ho person may encroach upon or otherwise impair any easement for a canal or ditch, unless the encroachment or impairment does not unreasonably interfere with the easement” This sua sponte remaking of the statute is untenable in the extreme, and it violates any number of rules of statutory construction, not the least of which is § 1-2-101, MCA: “In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.” Worse still, while the majority has not outright repealed the statute, the engrafted language thoroughly compromises the shield which the Legislature enacted to protect irrigators from the very sort of conduct that is at issue here.
¶39 The Legislature could not have been clearer: ‘No person may encroach upon or otherwise impair any easement for a canal or ditch.” Section 70-17-112(2), MCA. I would simply enforce this plain and unambiguous statutory mandate and hold that Joukova’s culvert and rock bridge violate the statute because-as we all agree-they encroach upon or otherwise impair MRC’s easement rights. I would not embark on a discussion of common law principles, asking whether the encroachment or impairment arises to “unreasonable interference,” as this consideration is not included in the statutory language and, thus, is not part of the statutory calculus.
Rules of Statutory Analysis
¶40 I begin with three general observations. First and foremost, the Court’s extended discussion of common law doctrines-more specifically, cases addressing “unreasonable interference” with *15 easements4s entirely beside the point and unnecessary, given the facts here. At issue is a statute, §70-17-112, MCA, the language of which is perfectly plain, clear, and unambiguous. See Opinion ¶ 13. That being the case, principles of common law, which might otherwise be applicable to the issue at hand, have been statutorily abrogated. Section 1-2-103, MCA, states:
The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to the statutes of the state of Montana. The statutes establish the law of this state respecting the subjects to which they relate, and their provisions and all proceedings under them are to be liberally construed with a view to effect their objects and to promote justice.
Accordingly, the Court’s discussion of the common law that applies to other types of easements has no relevance here and is, therefore, dicta because §70-17-112, MCA, has trumped all of that with respect to ditch easements.
¶41 Second, because the statutory language is plain, clear, and unambiguous, there is no need to resort to legislative history, as the Court does at ¶ 13. Our rules of statutory construction are quite clear on this point. Tn interpreting a statute, we look first to the plain meaning of the words it contains. Where the language is clear and unambiguous, the statute speaks for itself and we will not resort to other means of interpretation. In this regard, words used by the legislature must be given their usual and ordinary meaning.” Rocky Mt. Bank v. Stuart, 280 Mont. 74, 80, 928 P.2d 243, 246-47 (1996) (citations omitted); see also State v. Goebel, 2001 MT 73, ¶ 21, 305 Mont. 53, 31 P.3d 335 (THhere is no reason for us to engage in a discussion of the legislative history to construe [a] statute when we have determined that the language of the statute is clear and unambiguous on its face.”). Here, giving the words their usual and ordinary meaning, the Legislature’s intention is crystal clear from the language of the statute: no person may encroach upon or otherwise impair any easement for a canal or ditch. There is no need to consult legislative history to ascertain the meaning of these unambiguous words.
¶42 Third, because the Legislature has spoken in the clearest possible language, the Court is not at liberty to interpret the statute by reading into it language that is not there. “[0]ne of the most basic precepts governing this Court’s function [is] the long-standing mandate that we must not insert what the Legislature has omitted.” Saucier v. McDonald’s Rests. of Mont., Inc., 2008 MT 63, ¶ 70, 342 Mont. 29, 179 *16 P.3d 481 (citing § 1-2-101, MCA). Here, the Court improperly reads into § 70-17-112(2), MCA, language of ‘interference” and “reasonableness” in an unnecessary and misguided attempt to ‘balance” property rights and create its own perception of good “public policy.” Rather than simply enforce the ‘balance” and “public policy” that the Legislature itself has already decreed, the Court effectively legislates from the bench and amends the statute to achieve a more palatable result. I discuss these observations in further detail below.
Application of §70-17-112, MCA
¶43 Again, regardless of the law applicable to other types of easements, the analysis of ditch easements is governed by §70-17-112, MCA. This statute provides, first, that ‘Ta] person with a canal or ditch easement has a secondary easement to enter, inspect, repair, and maintain a canal or ditch.” Section 70-17-112(1), MCA. This is a codification of prior caselaw. In Laden v. Atkeson, 112 Mont. 302, 116 P.2d 881 (1941), we observed that ‘[a] person having an easement in a ditch running through the land of another may go upon the servient land and use so much thereof on either side of the ditch as may be required to make all necessary repairs and to clean out the ditch at all reasonable times.” Laden, 112 Mont. at 306, 116 P.2d at 883 (internal quotation marks omitted). We explained that this is called a “secondary easement” and that it is “a mere incident of the [primary] easement that passes by express or implied grant, or is acquired by prescription.” Laden, 112 Mont. at 305-06, 116 P.2d at 883 (internal quotation marks omitted). The rationale behind this principle is that “when the use of a thing is granted, everything is granted by which the grantee may reasonably enjoy such use, that is, rights that are incident to something else granted-here to water and ditch rights.” Laden, 112 Mont. at 306, 116 P.2d at 883.
¶44 Next, the statute states that ‘[n]o person may encroach upon or otherwise impair any easement for a canal or ditch used for irrigation or any other lawful domestic or commercial purpose, including carrying return water.” Section 70-17-112(2), MCA. There may be no encroachment upon or impairment of “any” easement for a canal or ditch-neither the primary easement nor the secondary easement. The prohibition on encroachment and impairment, without any qualifications or exceptions, is more protective than our non-ditch caselaw, which prohibits only “unreasonable interference” with an easement holder’s rights. See ¶ 49, infra.
¶45 Here, it can be said, as a matter of law and irrefutable fact, that MRC’s primary easement (the ditch itself) has been encroached upon. *17 There is, after all, a massive obstruction right in the middle of it: Joukova’s culvert and rock bridge. Nobody could plausibly or rationally suggest that this is not an “encroachment”upon the primary easement. Obviously, it is. In fact, it is the embodiment of what §70-17-112(2), MCA, expressly prohibits. Evidently, Joukova thought that she could blatantly flout the statute and that MRC either would not pursue the matter or would lose in court. Unfortunately, she was correct as to the latter.
¶46 For reasons that are not clear from the briefs or the record, MRC has not pursued the most obvious claim it could raise: that its primary easement has been violated by virtue of the physical occupation of the ditch. Instead, MRC has raised only its secondary easement rights, as the Court notes at ¶ 10. Nevertheless, the standard is still the same: Has Joukova “encroached upon or otherwise impaired” MRC’s secondary easement? Section 70-17-112(2), MCA; see also Opinion, ¶ 15 (‘ÍW]e apply the same analysis whether the case concerns primary or secondary easement rights.”).
¶47 At the outset, it is necessary to identify the specific secondary easement rights at issue. MRC’s ditch easement was established by prescription. See Opinion, ¶¶ 3-4, 16. Ditch easements obtained by prescription are expressly included within the protections of § 70-17-112, MCA, as stated under subsection (4) of the statute. Furthermore, as noted, a secondary easement may be acquired by prescription. Laden, 112 Mont. at 305-06, 116 P.2d at 883. The Court asserts that the location and scope of this easement is governed by the common law. Opinion, ¶ 14. The truth is, however, that there is a controlling statute which states that “[t]he extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired.”Section 70-17-106, MCA (emphasis added). We accordingly have recognized, in numerous cases, that the scope of an easement gained by prescription is defined by the character and extent of the use made during the prescriptive period. Leichtfuss v. Dabney, 2005 MT 271, ¶ 30, 329 Mont. 129, 122 P.3d 1220; Kelly v. Wallace, 1998 MT 307, ¶ 31, 292 Mont. 129, 972 P.2d 1117, and cases cited therein. Here, MRC has cleaned and maintained its ditch for the last 60 years by utilizing a bulldozer (with an eight-foot-wide blade), a backhoe, or a trackhoe through the bottom of the ditch and on the ditch banks. Maintenance begins at the point of diversion on the Musselshell River and continues through to MRC’s property, a distance of several miles. As the Court acknowledges, “[tjhere is no question as to the validity or existence of... [this] secondary easement *18 for ditch maintenance.” Opinion, ¶ 4.
¶48 Knowing the extent of MRC’s secondary easement, the only question remaining is whether Joukova’s culvert and rock bridge “encroach upon or otherwise impair” that easement. Section 70-17-112(2), MCA. In this regard, the Court concedes that Joukova’s culvert ‘impair[s]” MRC’s secondary easement rights. Opinion, ¶ 29. The Court also concedes that the culvert and the rock bridge are an “encroachment” upon the easement. Opinion, ¶ 24. Given these facts, there is nothing more to say. Section 70-17-112(2), MCA, has been violated. End of story.
The Court’s Approach
¶49 The error in the Court’s approach is its dogged refusal to apply the statute according to its plain language. Our cases have adopted the principle that the owner of a servient estate may make use of the land in any lawful manner that she chooses, so long as the use is not inconsistent with and does not interfere with the rights reserved to the easement holder. See City of Missoula v. Mix, 123 Mont. 365, 372, 214 P.2d 212, 216 (1950); Titeca v. State, 194 Mont. 209, 214, 634 P.2d 1156, 1160 (1981); Flynn v. Siren, 219 Mont. 359, 361, 711 P.2d 1371, 1372 (1986); Stamm v. Kehrer, 222 Mont. 167, 171, 720 P.2d 1194, 1196 (1986). Subsequently, we modified this rule to prohibit only interference that is “unreasonable.” See Strahan v. Bush, 237 Mont. 265, 268-69, 773 P.2d 718, 721 (1989); Gabriel v. Wood, 261 Mont. 170, 176-78, 862 P.2d 42, 45-47 (1993); Mason v. Garrison, 2000 MT 78, ¶¶ 47-49, 299 Mont. 142, 998 P.2d 531. No one disputes this standard, insofar as it applies to easements other than ditch easements.
¶50 With respect to ditch easements, however, the Legislature has abrogated that standard. The Legislature removed any subjective inquiry into the reasonableness of an encroachment or impairment. The Legislature determined, as a matter of public policy, that ‘tn]o person may encroach upon or otherwise impair any easement for a canal or ditch used for irrigation or any other lawful domestic or commercial purpose, including carrying return water.” Section 70-17-112(2), MCA. Had it wanted to, the Legislature could have used the words “[n]o person may unreasonably interfere with any easement for a canal or ditch.”The Legislature did not use those words, however. Rather, the Legislature chose a more clear, objective, and categorical prohibition: no encroachment or impairment, period.
¶51 Accordingly, whether an encroachment or impairment amounts to “interference,” and whether the encroachment or impairment is “unreasonable,” are not the issue. There is no allowance in the statute *19 for encroachments and impairments that interfere “reasonably” with the easement. Nor, for that matter, are there allowances for encroachments and impairments that are “slight and immaterial” (Opinion, ¶ 19) or “minimal” (the standard applied by the District Court). Pursuant to the plain statutory language, no person may “encroach upon” or “otherwise impair” any easement for a ditch, no matter how “reasonable,” “slight,” ‘immaterial,” or “minimal” one might think the encroachment or impairment is.
¶52 Unfortunately, the Court replaces the statutory standard with its own judge-made standard, as evidenced by at least three statements in the Opinion. First, referring to Joukova’s culvert and rock bridge, the Court observes that “such a permanent and immovable encroachment constitutes unreasonable interference with the easement right.” Opinion, ¶ 24. It does not matter, however, whether the encroachment constitutes unreasonable interference. The fact that it is an “encroachment” means that it is per se in violation of the statute. Second, the Court observes that Ti]f interference is ‘slight and immaterial ... it is not objectionable.’ ” Opinion, ¶ 19 (ellipsis in original). What possible relevance could this statement have to the analysis unless the Court is engrafting a “slight and immaterial interference” exception onto the statute? Third, the Court states that ‘isjome permanent encroachments may not justify a finding of unreasonable interference.” Opinion, ¶ 27. Again, what purpose could this statement serve except to dilute the statutory standard by creating an exception where the otherwise prohibited encroachment does not “unreasonably interfere” with the easement holder’s rights?
The Court’s Fictitious Presumption that the Legislature Agrees with It
¶53 The Court asserts that ‘ti]n construing the requirements of §70-17-112, MCA, we consider our discussion and application of its provisions over the statute’s thirty-year history.” Opinion, ¶ 14. The Court then goes on to state that ‘“[w]e presume that the legislature is aware of the existing law, including our decisions interpreting individual statutes .... We presume that if the legislature disagreed with our interpretation ... it would have amended the statute accordingly.’ ” Opinion, ¶ 14 (ellipses in original). For reasons discussed further below, I do not believe these principles are applicable in the present case. Briefly, we have not previously addressed the specific question presented here, and thus the Legislature has not yet had the opportunity to “disagree” with our statutory interpretation. But even assuming, for the sake of argument, that we have, in fact, *20 interpreted §70-17-112, MCA, in a way that is relevant to this case, I cannot agree with the foregoing quoted principles in any event.
¶54 As an initial matter, for purposes of clarity, the Court cites Swanson v. Hartford Ins. Co., 2002 MT 81, ¶ 22, 309 Mont. 269, 46 P.3d 584, for the language quoted above about what we “presume.” See Opinion, ¶ 14. It should be noted, however, that this language is not properly attributed to Swanson. Rather, the specific language quoted by the Court actually appears in a parenthetical citation to a different case-namely, Gaustad v. City of Columbus, 265 Mont. 379, 382, 877 P.2d 470, 472 (1994). See Swanson, ¶ 22. Gaustad, in turn, cites In re Wilson’s Estate, 102 Mont. 178, 194, 56 P.2d 733, 737 (1936).
¶55 Second, the Court misapplies the quoted principles about what we “presume.” We presume that the Legislature, when it actually enacts legislation-i.e., when it affirmatively takes action-^roceeds having in mind existing law, including this Court’s interpretations of the statute or statutes at issue. See Swanson, ¶ 22; Gaustad, 265 Mont. at 382, 877 P.2d at 472; Wilson’s Estate, 102 Mont. at 194, 56 P.2d at 737. Section 70-17-112, MCA, however, was enacted in 1981 and has never been amended. Thus, the presumption that the Legislature agrees with our interpretations of the statute is not applicable in the present case. Nevertheless, the Court perverts this principle to hold that when the Legislature does not enact any legislation at all-i.e., when the Legislature takes no action whatsoever in relation to a particular statute^he Legislature tacitly ratifies this Court’s statutory construction. This proposition is without foundation in law or reason.
¶56 It is one thing for the Legislature to affirmatively enact legislation mindful of this Court’s existing statutory interpretations, which is the point we made in Swanson, Gaustad, and Wilson’s Estate. It is quite another, however, for the Legislature to do nothing at all. To presume that the Legislature’s passive failure to amend a statute constitutes affirmative “agreement” with our statutory interpretation is a dangerous and untenable precedent. Notably, this is analogous to presuming that the Supreme Court’s decision not to grant certiorari in a particular case means that the Supreme Court agrees with the lower court’s decision; after all, following the majority’s reasoning, if the Supreme Court disagreed with the lower court’s decision, it would have taken the case and reversed it. Of course, it is axiomatic that the *21 Supreme Court’s denial of certiorari is not a decision on the merits.[1] And the same is obviously true regarding the Legislature’s failure to amend a statute following this Court’s construction of it. There are any number of reasons why the Legislature might not take up the matter. The Court’s presumption assumes that (1) the Legislature is aware of all of our statutory interpretations, (2) the Legislature has the resources to analyze and address all of those statutory interpretations during its biennial sessions, (3) the Legislature convenes its members to decide whether they agree or disagree with this Court’s various statutory constructions, and (4) when a majority of the members decline to amend a statute, it is because they affirmatively agree with what we have said. This rationale is complete fiction and without any basis in reality. Typically, when a statutory issue is brought to the Legislature’s attention, it is because a lobbyist disagrees with one of our decisions and has determined to expend the resources to get the statute amended. See e.g. Laws of Montana, 2001, ch. 229 (amending the exclusive remedy provision in the Workers’ Compensation Act with the express purpose of abrogating our statutory analysis in Sherner v. Conoco, Inc., 2000 MT 50, 298 Mont. 401, 995 P.2d 990). But it is sheer folly to “presume”that when the Legislature takes no action at all with regard to a given statute, it must have considered what we said and agreed with it. That is not what our discussions in Swanson, Gaustad, and Wilson’s Estate stand for. Moreover, this approach ignores this Court’s continuing obligation to interpret statutes according to their plain meaning and to correct its own mistakes. See e.g. State v. Stiffarm, 2011 MT 9, 359 Mont. 116, 250 P.3d 300. As a result of today’s decision, however, the Legislature has been put on notice: It must apprise itself of all of this Court’s statutory interpretations and, if it disagrees with a particular interpretation, it must “amend the statute accordingly’ lest a failure to act be “presumed” to be affirmative agreement with what we have said.
¶57 Third, regardless of whether the Legislature’s failure to amend a statute can be construed as tacit agreement with this Court’s *22 construction of the statute, our decision today implicates important access-to-justice issues. Our courts are faced with increasing numbers of ordinary citizens who must represent themselves. These individuals must be able to open the Montana Code Annotated and rely on the plain language of the statutes contained therein. Ordinary citizens should not be required-as they now are under today’s decision-to obtain and sift through myriad volumes of the Montana Reports in order to ascertain whether this Court has construed a particular statute differently than its plain language, and then comb through the annals of legislative history to determine whether the Legislature has failed to amend the statute and, thereby, tacitly expressed its agreement with what we have said. For one thing, only attorneys would be aware, in the first place, that this Court occasionally construes statutes contrary to their plain language (today’s decision being an example). Moreover, only attorneys would have the skills to conduct the legal research necessary to make this determination. Indeed, had MRC itself opened the Montana Code Annotated and looked at §70-17-112(2), MCA, it would have seen that ‘[n]o person may encroach upon or otherwise impair any easement for a canal or ditch used for irrigation or any other lawful domestic or commercial purpose, including carrying return water.” MRC would not have known that this Court (according to today’s majority opinion) has previously construed this language to mean something less rigorous than what it actually says-namely, that “no person may unreasonably interfere with any easement for a canal or ditch.” And MRC most certainly would not have understood, as it now must, that the corollary to this rule is also true-i.e., that a person may reasonably interfere with an easement for a canal or ditch. It undermines the goal of access to justice, and is simply unfair, that self-represented litigants cannot rely on what the Montana Code Annotated actually says and must hire an attorney to figure out what this Court has said, and what the Legislature has not said, on the matter.
¶58 Lastly, also at ¶ 14 of the Opinion, the Court cites Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction vol. 2B, §49:5, 32-34 (7th ed., Thomson Reuters/West 2008), for the proposition that ‘[¡Judicial construction of a statute becomes part of the legislation from the time of its enactment.” Notably, this was the same argument made by the dissent in Stiffarm and supported by the same authority:
However, ‘judicial construction of a statute becomes part of the legislation from the time of its enactment.” Norman J. Singer and *23 J.D. Shambie Singer, Sutherland Statutes and Statutory Construction, vol. 2B, § 49:5, 32-34 (7th ed., Thompson-West 2008). Whether this Court’s initial construction of the statute was correct or not, it has become the law.
Stiffarm, ¶ 24 (Baker & Rice, JJ., dissenting). This approach, however, was decidedly rejected by the Court in Stiffarm, which held: ‘We conclude, however, that we cannot reconcile our duty to apply legislation as written with the decisions in these [prior] cases. We accordingly expressly overrule [the prior cases].” Stiffarm, ¶ 18. Our decision in Stiffarm stands for the proposition that it is “our duty to apply legislation as written.” Stiffarm, ¶ 18. Inexplicably, the majority disregards this rule in the present case.
¶59 In sum, even assuming, for the sake of discussion, that we have previously interpreted §70-17-112, MCA, in a manner that is pertinent to the present case, I disagree with the propositions that the Legislature’s failure to take any action in regard to our interpretation (1) justifies our “presuming” that the Legislature agrees with our construction and (2) relieves us of our duty to apply legislation as written.
The Court’s Misapplication of our Caselaw
¶60 That said, while the Court implies that we have, over the last 30 years, “discussed and applied” the provisions of §70-17-112, MCA, in a way that is pertinent to the present case (see Opinion, ¶ 14), the fact is that none of the easement cases cited by the Court have addressed the specific arguments raised by MRC here. First of all, almost none of the cited cases involved a secondary ditch easement or, more specifically, the application of §70-17-112, MCA. Their irrelevance, therefore, is self-evident.[2] Secondly, the two cited cases that did *24 involve a ditch easement (discussed below) are readily distinguishable from the present case. Before discussing those cases, however, it is necessary first to review what MRC is specifically arguing on appeal:
■ ‘The Ditch Owners have grave concerns over the District Court’s reliance on an alleged ‘minimal’ hindrance standard of their rights under 70-17-112, MCA. The plain language of the statute does not allow for any encroachment or impairment of irrigation ditch owners’ secondary easement rights on the basis that the encroachment only ‘minimally’ interferes with ditch maintenance.”
■ ‘The plain language of 70-17-112, MCA, prohibits any impairment or encroachment of a ditch owner’s secondary easement rights without the ditch owner’s permission.... [T]he Court cannot insert ‘what has been omitted or to omit what has been inserted.’ Section 1-2-101, MCA.” (Emphasis in original.)
■ ‘The District Court inserted a standard into 70-17-112, MCA, that cannot be found in the plain language of the statute.... [T]he District Court found Joukova’s culvert/rock bridge to have ‘hindered’ the Ditch Owners’ ability to clean the Ditch. Yet, the court went one step too far in justifying Joukova’s hindrance by qualifying the impairment as minimal-inserting a ‘minimal’ standard into §70-17-112, MCA. Nowhere in §70-17-112, MCA, is there an allowance for minimal encroachment or impairment of a secondary easement right.”
■ “Joukova has provided no authority-either statutory or common law-that the District Court is entitled to insert a ‘minimal’ standard into 70-17-112, MCA. This is for good reason, as no such authority exists. Section 1-2-101, MCA, prevents district courts from inserting words into statutes. Here, the plain language of § 70-17-112, MCA, controls the resolution of this dispute: ‘[n]o person may encroach upon or otherwise impair any easement for a canal or ditch used for irrigation ....’ The District Court’s insertion of a ‘minimal’ standard (in violation of §1-2-101, MCA) to the statute must be reversed.” (Ellipsis and brackets in original.)
As will be seen, neither of the ditch cases cited by the Court addressed *25 these arguments, as they were not made in those cases. The present case is the first in which we have been squarely presented with the question whether some encroachments or impairments are acceptable while others are not. It is bad enough that the Court answers this question incorrectly. It is worse that the Court cloaks its erroneous answer in the mantle of prior cases which did not even confront the question directly.
¶61 First, in Boylan v. Van Dyke, 247 Mont. 259, 806 P.2d 1024 (1991), the servient landowners (the Van Dykes) constructed a one-acre pond on their land. To do so, they placed a dam across Boylan’s irrigation ditch (the Tudor Lane Ditch)-a patent violation of his primary easement, incidentally. Boylan then filed suit, “claiming that construction of the pond interfered with his ditch right to transport irrigation water down the Tudor Lane Ditch.” Boylan, 247 Mont. at 261-62, 806 P.2d at 1025. The district court correspondingly framed the issue as “whether the pond interfered with Mr. Boylan’s use of the Tudor Lane Ditch, and if so, what the damages were.” Boylan, 247 Mont. at 262, 806 P.2d at 1026. After personally examining the pond and the ditch, the judge concluded that “the Complaint of the plaintiff that they were deprived of the waters of Spring Creek is dispelled.” Boylan, 247 Mont. at 263, 806 P.2d at 1026. Bottom line, ‘Mr. Boylan failed to present any evidence to support his claims of unlawful interference.” Boylan, 247 Mont. at 266, 806 P.2d at 1028. On appeal, Boylan maintained that “the construction of the pond was an unlawful interference with his ditch easement” because “the pond deprived him of irrigation water for his land and reduced the value of his land to half of. what it was worth prior to construction of the pond and the destruction of his ditch.” Boylan, 247 Mont. at 264, 806 P.2d at 1027. “After reviewing the record in this case,” however, we concluded that “there is no evidence to support Mr. Boylan’s claims.” Boylan, 247 Mont. at 264-65, 806 P.2d at 1027.
¶62 The Court misstates our holding in Boylan, citing it for the propositions that “uses not affecting the dominant owner’s use of an easement will not trigger a finding of unreasonable interference,” Opinion, ¶ 22 (emphasis added), and ‘fsjome permanent encroachments may not justify a finding of unreasonable interference,” Opinion, ¶ 27 (emphasis added). The word “unreasonable,” however, does not appear anywhere in the Boylan decision. In point of fact, we never considered whether the interference alleged by Boylan was “unreasonable.” Rather, we concluded that he had simply failed to show ‘interference” at all. And this is why Boylan contributes nothing *26 to the statutory analysis in the present case. At no point in that decision did we address whether a “reasonable” or “minimal” encroachment or impairment is permissible under the statute. While Boylan certainly could have pursued the claims which MRC has pursued here, given that the Van Dykes had erected a dam and created a pond in the ditch, Boylan merely claimed that the dam and pond deprived him of irrigation water for his land and reduced the value of his land. The district court found this to be factually unsupported. We likewise found no evidence to support Boylan’s claims. The only point where we even purported to apply §70-17-112, MCA, was in granting costs and attorney’s fees to the Van Dykes as the “prevailing party.” Boylan, 247 Mont. at 267, 806 P.2d at 1029.
¶63 The second case, relied on heavily by the Court, is Engel v. Gampp, 2000 MT 17, 298 Mont. 116, 993 P.2d 701. See Opinion, ¶¶ 15, 18, 19, 25, 31. As author of the Engel opinion, however, I can state with assurance that we did not, in that case, address the arguments under consideration here. Contrary to the Court’s insinuations, there was no question raised as to whether an encroachment upon or impairment of a secondary ditch easement violates §70-17-112, MCA, no matter how “minimal” or “reasonable” it is. In fact, the district court in Engel concluded that the Gampps had “encroached upon and impaired” Engel’s secondary easement, and no one disputed that conclusion on appeal. And there certainly was no discussion of whether the encroachment and impairment were “unreasonable”-fehe Court’s misreading of Engel notwithstanding. Indeed, the primary question in the case was whether Engel had “prevailed” on her claims in the district court, thus justifying an award of costs and attorney’s fees. Engel, ¶ 10. This necessitated a discussion of what her claims were, how the district court analyzed those claims, and whether she prevailed on them-nothing more. Engel, ¶¶ 34-47.
¶64 Engel involved a ditch easement which began at the western end of the Gampps’ property and flowed north, northeast, and then east, eventually passing through Engel’s adjacent property. Engel, ¶ 12. The issue prompting the litigation concerned Engel’s secondary access easement. There was a footpath along the ditch that was used for such purposes as regulating the head gates, cleaning out the ditch, and routine inspection. Engel, ¶ 12. This footpath was Engel’s principal secondary easement for accessing the ditch. The problem was that vehicles could not use this route, and some of the repair and maintenance work required vehicular access. Engel, ¶¶ 13-14. Engel thus claimed she had an alternate secondary easement which allowed *27 her to drive vehicles across the Gampps’ property. Engel, ¶¶ 6, 17. Engel based this claim on ‘historic use”; however, she failed to show that she had ever attempted to establish, maintain, or improve a vehicle route over the Gampps’ property. Engel, ¶¶ 17, 44. Furthermore, any such historic use would have involved negotiating a gate, which was usually locked, at the boundary of the Gampps’ property. Engel’s husband had put this gate in place back when the Engels held both their own property and the Gampps’ property in common ownership, and he required that ditch users notify him before accessing the property. Engel, ¶ 18.
¶65 Accordingly, the district court concluded that Engel’s secondary easement was along the footpath. Engel, ¶¶ 24, 41. The district court rejected her claim of an existing secondary easement across the Gampps’ property based on historic use. Engel, ¶ 44. Instead, recognizing that vehicular access to the ditch was occasionally necessary, the district court established a ‘hew, additional” secondary easement across the Gampps’ property that she could use for this purpose. Engel, ¶¶ 24, 37, 41-44, 46. The district court defined the location and scope of this ‘hew” easement by what the court thought was reasonably necessary for Engel and not unduly burdensome to the Gampps. Engel, ¶¶ 24,44, 50, 52-55. The scope of this ‘hew” easement included the gate at the boundary of the Gampps’ property. Engel, ¶¶ 24,46, 55. Hence, Engel was not a “gate case” (Opinion, ¶ 25) in the sense that a physical obstruction was placed across a formerly unobstructed access route. The gate was always there. It was within the scope of the secondary easement.
¶66 The district court concluded, however, that the Gampps had “encroached upon and impaired” Engel’s secondary easement rights by intimidating and threatening her and by keeping the gate locked when she needed access. Engel, ¶¶ 25, 34, 47. Significantly, there was no discussion whatsoever by the district court as to whether this encroachment and impairment was “unreasonable” or “minimal.” Nor was there any discussion by this Court as to whether the Gampps’ conduct amounted to “unreasonable interference” with Engel’s secondary easement. The fact of the impediments was sufficient to violate the statute. See Engel, ¶¶ 36, 38, 47.
¶67 The Court’s entire discussion (in the present case) of‘the common law” of easements is premised on our citations in Engel to Laden v. Atkeson, 112 Mont. 302, 116 P.2d 881 (1941), and Gabriel v. Wood, 261 Mont. 170, 862 P.2d 42 (1993). Opinion, ¶¶ 14-15. As an initial matter, it should be noted that the Court misstates our citation to Gabriel in *28 Engel. In Gabriel, which involved an obstruction to a primary-easement (an ingress/egress road), we said that “a gate may be constructed across the easement if it . . . does not interfere with reasonable use of the right-of-way.” 261 Mont, at 177, 862 P.2d at 46. The Court, at ¶ 15 of the Opinion, quotes part of this language, but changes the word “a gate” to “any obstruction of an easement” (a dubious rewriting of Gabriel in itself), italicizes the word “reasonable” for added emphasis, and then, shockingly, attributes this passage as “our observation” in Engel. However, we did not “observe” in Engel that “any obstruction of an easement must not interfere with reasonable use of the right-of-way.” Opinion, ¶ 15 (emphasis in original, internal quotation marks omitted). This is a blatant rewriting of that case. The proposition for which we cited Gabriel in Engel was this: “a servient owner may maintain a locked gate across an easement so long as it does not ‘interfere with the use and right reserved to the dominant tenement or estate.’ ” Engel, ¶ 50 (quoting Gabriel, 261 Mont. at 176, 862 P.2d at 45). Contrary to the Court’s discussion at ¶ 15 of the Opinion, we did not qualify the word “interfere” with the word “reasonable.”
¶68 More importantly, our citations to Laden and Gabriel in Engel concerned the rules for defining the location and scope of a secondary easement in the first instance. We did not cite Laden or Gabriel for the Court’s proposition here that ‘the common law”controls over the plain and unambiguous language of § 70-17-112(2), MCA. Engel had complained that the district court should have enjoined the Gampps from interfering with her alternate secondary easement. Engel, ¶¶ 48, 50. Recall that the district court had only just determined the parameters of that ‘hew” easement within the context of the Engel case. Engel, ¶ 42. We noted, however, that Ttjhere is substantial evidence that Engel’s access for routine inspections and maintenance is, and always has been, ‘free and uninterrupted,’ contrary to her assertion on appeal.” Engel, ¶ 50. Then, after citing Gabriel for the foregoing proposition (that a servient owner may maintain a locked gate across an easement, so long as it does not interfere with the use and right reserved to the dominant tenement), we observed that the district court had fashioned Engel’s ‘hew” secondary easement for vehicular access, with the allowance for a locked gate, so that the Gampps would not be unreasonably burdened. Engel, ¶ 50.
¶69 In other words-and this is the critical aspect of Engel that is apparently lost on the Court today-the gate and the fact that it could be locked were an integral component of Engel’s alternate secondary *29 easement. Engel could not claim interference with her easement based on the locked gate for the simple reason that she never had the right to unfettered access in the first place. Of course, the Gampps were required to unlock the gate upon receiving notice that Engel needed to access the ditch over their property. Engel, ¶ 52. But a careful reading of Engel shows that our discussion at ¶¶ 50-52 stands for the unremarkable proposition that a gate, which is kept locked except when Engel serves notice that she needs access, is an inherent limitation on her alternate secondary easement. This is an important distinction from the present case, where the culvert and bridge were never an inherent limitation on MRC’s secondary ditch easement. Rather, MRC’s easement-the validity of which is not in dispute, and the location of scope of which are not at issue-entities MRC to an obstructed ditch, the entire length of which can be maintained with a bulldozer as established through prescriptive use.
¶70 Accordingly, there are two points to be understood about Engel. First, we did not hold that some interference with a ditch easement is acceptable under the statute while other interference is not, depending on what we think is “reasonable.” We were not presented with that argument. Moreover, Engel’s claim of ‘interference” had no merit anyway, given that the access restrictions about which she complained were within the scope of her “new” alternate secondary easement as fashioned by the district court. Second, we did not hold, or even intimate, in Engel that the touchstone of analysis under §70-17-112(2), MCA, is “unreasonable interference.”Rather, the Court today manufactures that proposition out of whole cloth, despite the unambiguous statutory prohibition against encroachments and impairments of any kind.
¶71 In this regard, it is noteworthy that the Court, at ¶ 23, summarily dismisses two precedents that contradict its approach here. In Kephart v. Portmann, 259 Mont. 232, 855 P.2d 120 (1993), after the Portmanns exercised their right to enter, repair, and maintain their ditch under §70-17-112(1), MCA, the Kepharts filed suit and thereby forced the Portmanns into court to defend the existence of the ditch right and corresponding secondary easement. We held that “the Kepharts’ lawsuit constituted an impairment of the Portmanns’ easement under §70-17-112(2), MCA.” Kephart, 259 Mont. at 239, 855 P.2d at 124. The words “unreasonable interference” appear nowhere in our decision. Likewise, in Byrum v. Andren, 2007 MT 107, 337 Mont. 167, 159 P.3d 1062, after the easement holders accessed their ditch for maintenance purposes, the Byrums filed suit alleging trespass. We held that the *30 filing of the trespass claim ‘impaired and interfered” with the easement holders’ rights under § 70-17-112, MCA. Byrum, ¶ 50. Nowhere did we analyze whether this impairment and interference was “unreasonable.” The fact of impairment and interference was enough-as the statute contemplates.
¶72 The Court contends that our reasoning in Byrum, ¶ 46, is contrary to the statute’s ‘hard-and-fast” rule. Opinion, ¶ 31. Again, as author of the Byrum opinion, I can state with assurance that we did not, in that case, address the arguments under consideration here. Moreover, what we held in the cited paragraph of Byrum was simply this:
Respondents allege physical interference [with their ditch rights], namely that Byrums had continually confronted Respondents while they attempted to maintain the Ditch, blocked Respondents from accessing the headgate, and verbally harassed Respondents. The District Court found that the Byrums had not denied Respondents access to the headgate and had not prevented water from being conveyed down the Ditch. Testimony from trial indicates that the Byrums did occasionally block Respondents from using the headgates on the Ditch, but that the Byrums eventually allowed access. Evidence in the record supports the District Court’s finding that Byrums did not physically deny Respondents’ access to the headgate. The court’s finding is supported by substantial evidence and is not clearly erroneous in this regard.
Byrum, ¶ 46. We were not presented with and did not address the question whether some interference is reasonable while other interference is not.
¶73 But even if it could be said that Byrum, or any of our other cases, is authority for the Court’s approach of engrafting language onto a clear and unambiguous statute (which I do not believe to be the case), then our cases are wrong and should be corrected, not perpetuated. State v. Stiffarm, 2011 MT 9, ¶ 18, 359 Mont. 116, 250 P.3d 300 HW]e cannot reconcile our duty to apply legislation as written with the decisions in these [prior] cases. We accordingly expressly overrule [the prior cases].”). As Winston Churchill is reported to have said: ‘If you simply take up the attitude of defending a mistake, there will be no hope of improvement.”
¶74 In sum, the Court cherry-picks and misquotes language from a variety of cases-most of which have nothing to do with ditch easements4o justify its foray into “the common law” and its application of an “unreasonable interference” standard in lieu of the *31 statutory ‘bo encroachment or impairment” standard. The fact is that none of the foregoing cases is authority for the Court’s holding that an encroachment upon or impairment of a ditch easement is permissible, notwithstanding § 70-17-112(2), MCA, if the encroachment or impairment interferes reasonably with the easement holder’s rights. More to the point, none of our cases stand for the proposition that we may dilute the clear and unqualified statutory standard in favor of our own subjective “reasonableness” analysis.
‘Public Policy” and ‘Balancing”
¶75 As a final matter, I cannot agree with basing our decision on what we think is the better “public policy.” Opinion, ¶ 28. On the subject of ditch easements, the Legislature has spoken. It has taken the decision out of our hands and has set the standard that is to apply. See §1-2-103, MCA. ‘No person may encroach upon or otherwise impair any easement for a canal or ditch used for irrigation ....” Section 70-17-112(2), MCA. Whether there is interference, and whether that inference is unreasonable, is not part of the statutory calculus and, thus, is not relevant. I would simply apply the plain language of the statute, not try to improve upon it based on our own notions of what is good “public policy.”
¶76 For the same reason, I cannot agree with the premise that we must “balance”property rights in this case. See Opinion, ¶¶ 18,19,25. There is no ‘balancing” for the courts to do when a party holds a ditch easement. The Legislature has already struck the ‘balance”that it has determined is appropriate: no person may encroach upon or otherwise impair any easement for a canal or ditch used for irrigation, period. We are wrong to tweak this language by inserting a ‘balancing” requirement where the Legislature has already decided that the balance weighs in favor of the irrigator.
¶77 In this regard, the Court’s statement that “Joukova cannot be deprived of her rights to use her land currently accessed via the rock bridge,” Opinion, ¶ 30, is simply wrong; of course she can. Joukova bought her land in 2006 subject not only to MRC’s preexisting ditch easement, but also to Montana statutory law which states that “[n]o person”-Joukova included-inay encroach upon or otherwise impair any easement for a canal or ditch used for irrigation.” Section 70-17-112(2), MCA. Hence, Joukova never even had, in the first place, a right to use her land in any manner that involved encroaching upon or otherwise impairing MRC’s easement rights. Indeed, most of Joukova’s problems are of her own making and her ignoring the remedy which the statute provides. She should not now be heard to *32 complain. As we stated over 60 years ago,
[i]t is a rather specious argument to say that the [servient landowner] may not use this land as it desires to do, because of the burden imposed by the [easement] and therefore the burden must be lightened. One may not invade the property rights of another and justify or attempt to excuse or explain such legal wrong because of the need. The answer thereto is that the [servient landowner] knew of the limitations imposed on this property at the time it purchased, so it is assumed the [servient landowner] received what it paid for. If it desires the full unrestricted fee another conveyance is called for.
City of Missoula v. Mix, 123 Mont. 365, 372, 214 P.2d 212, 216 (1950). “Balancing” of Joukova’s rights is simply inapplicable to this case. She received what she paid for: land that is burdened by a ditch easement which she may not encroach upon or otherwise impair. If she can figure out how to use her land without violating MRC’s ditch easements, she is free to do so.
Conclusion
¶78 In conclusion, I cannot agree with the Court’s analysis. As a matter of undisputed fact, the Court acknowledges that we are dealing with an “obstruction”that constitutes an “encroachment”upon MRC’s ditch easement and that ‘impairs”MRC’s secondary easement rights. Opinion, ¶¶ 24, 29. That is the end of the inquiry. Joukova’s rock bridge and culvert violate the statute and must be removed. Whether the bridge and culvert “unreasonably interfere” with the ditch easement (passim), whether such interference is ‘ho more than necessary to achieve a reasonable balance of the parties’ property rights” (Opinion, ¶ 25), whether the bridge and culvert constitute a “major” imposition on MRC’s maintenance activities (Opinion, ¶ 24), whether the bridge and culvert cause “material inconvenience”to MRC (Opinion, ¶ 29), whether the bridge and culvert were “expensive” to install (Opinion, ¶ 26), and whether the bridge and culvert are “difficult” to remove (Opinion, ¶ 26) are all totally and completely irrelevant. The statute is violated by virtue of the encroachment and impairment. End of story.
¶79 But instead of enforcing the plain and unambiguous language that the Legislature has chosen, the Court has modified that language to allow for “interference” that is “reasonable.” Effectively, what the Court has done is reintroduce into the law of ditch easements a subjective “reasonableness” inquiry that the Legislature specifically removed from the analysis of encroachments and impairments upon *33 ditch easements entirely.
¶80 And, lest there be any doubt, the Court’s “unreasonable interference” approach is not limited to secondary easements. As the Court states at ¶ 15, “we apply the same analysis whether the case concerns primary or secondary easement rights.” What this means is that had MRC objected that Joukova’s culvert and rock bridge violate MRC’s primary easement (which they do, by virtue of encroaching upon the ditch), MRC would still have to show that this encroachment “unreasonably interferes” with its easement rights because, as the Court states at ¶ 27, “ts]ome permanent encroachments may not justify a finding of unreasonable interference.” This is so deliberately contrary to the statutory mandate as to be absurd.
¶81 From a broader perspective, in its attempt to ‘balance” property rights and create its own “public policy,” the Court has now placed farmers and ranchers who depend on irrigation rights and the ability to access and maintain irrigation ditches-the life’s blood of their operations-in an untenable position. As a result of today’s Opinion, a servient landowner no longer needs to meet with the holder of a canal or ditch easement in order to negotiate the easement holder’s written consent to the desired encroachment or impairment (see §70-17-112(3), MCA). Instead, the servient landowner can simply encroach upon and impair the ditch easement at will, so long as she does not “unreasonably interfere” with it.
¶82 There is no reason, much less any legal basis, why owners of canal or ditch easements should have to defend, as they henceforth must, their statutory easement rights from the ‘interference” (reasonable or otherwise) of every hobby rancher with 20 acres and a horse. In this regard, I agree with MRC’s observations in its reply brief:
The statute does not allow for any encroachments or impairments without written permission for good reason. Under the District Court’s “minimal”standard [and now this Court’s “unreasonable interference” standard], any landowner through which a canal is located may employ self-help by changing the character of a ditch without court approval, or at a bare minimum, permission of the easement holders. Based on the District Court’s holding [and now this Court’s holding], a landowner may install an obstruction in a ditch without permission. The ditch owner’s only recourse is to go to court and file suit to have the obstruction removed. This “shoot first, ask forgiveness later” method of self-help was not contemplated by the Legislature in § 70-17-112, MCA. This is especially evident in the fact the Legislature prescribed a clear *34 method for obtaining a ditch owner’s permission to impair or encroach the ditch owner’s secondary easement rights. Section 70-17-112(3), MCA.
¶83 While the majority admonishes this Dissent that the law obliges dominant and servient landowners “to be reasonable with one another,” Opinion, ¶ 31, the failing of the Court is its intransigent refusal to recognize that the law requires no such thing. Indeed, the overriding obligation of dominant and servient landowners is, first, to each follow the law! Here, MRC followed the law in exercising its easement rights in the manner it had for over 60 years. Joukova, on the other hand, had her statutory remedy-obtaining written consent from MRC for her encroachment upon their ditch easement and the corresponding impairment of their secondary easement-and she blatantly ignored that process. Joukova thumbed her nose at § 70-17-112(3), MCA, and arrogantly planted her culvert and rock bridge squarely in the middle of the irrigation ditch that MRC depended upon for the life’s blood of its haying and cattle operations. So much for reasonableness!
¶84 The majority drapes itself in the mantle of history-er, more accurately, revisionist history. In point of fact, until today, Montana’s farmers, ranchers, and irrigators were not burdened with the necessity of having to shut down their seasonal ditch maintenance operations to deal with and, ultimately, litigate with hobby ranchers, second-home owners, the rich and famous, and others who blatantly flout the statute that the Legislature enacted to prevent precisely the conduct which this Court now decrees must be reasonably accommodated in the interests of neighborly harmony. A more wrong-headed and perverse result is difficult to imagine.
¶85 At the risk of its inaction being deemed by this Court as agreement with our decision in this case (Opinion, ¶ 14), it will, no doubt, be left to the next session of the Legislature to amend § 70-17-112, MCA, to make it even more clear and plain that ‘ho encroachment” and ‘ho impairment” really does mean ‘ho encroachment” and ‘ho impairment” and that there are not implicit exceptions for encroachments and impairments that the courts and servient landowners believe ‘interfere reasonably” with the ditch owner’s rights. In that respect, at least, I suspect that the lobby for farmers, ranchers, and irrigators is a good deal more dynamic than whatever the hobbyists will be able to put up.
¶86 While I concur in the Court’s decision to reverse the District Court, I otherwise strenuously dissent from the Court’s Opinion.

 See Evans v. Stephens, 544 U.S. 942, 942, 125 S. Ct. 2244, 2244 (2005) (Stevens, J., respecting the denial of certiorari) (“[A] denial of certiorari is not a ruling on the merits of any issue raised by the petition.’!); Md. v. Baltimore Radio Show, 338 U.S. 912, 919, 70 S. Ct. 252, 255 (1950) (Frankfurter, J., respecting the denial of certiorari) (“[T]his Court has rigorously insisted that such a denial carries with it no implication whatever regarding the Court’s views on the merits of a case which it has declined to review.... The one thing that can be said with certainty about the Court’s denial of Maryland’s petition in this case is that it does not remotely imply approval or disapproval of what was said by the Court of Appeals of Maryland.’!).

 Nevertheless, I note the following. Mattson v. Mont. Power Co., 2009 MT 286, 352 Mont. 212, 215 P.3d 675, involved a claim that the dominant tenement was causing unreasonable damage to, and interference with, the servient landowners’ properties along Flathead Lake due to the manner in which it was operating Kerr Dam. No ditch easement was at issue; no statute prohibiting encroachment or impairment was at issue. Flynn v. Siren, 219 Mont. 359, 711 P.2d 1371 (1986), Stamm v. Kehrer, 222 Mont. 167, 720 P.2d 1194 (1986), Strahan v. Bush, 237 Mont. 265, 773 P.2d 718 (1989), and Gabriel v. Wood, 261 Mont. 170, 862 P.2d 42 (1993), each involved a gate placed by the servient landowner across a primary easement, namely, an ingress/egress road leading to the dominant landowner’s property. No ditch easement was at issue; no statute prohibiting encroachment or impairment was at issue. Titeca v. State, 194 Mont. 209, 634 P.2d 1156 (1981), also involved a primary easement for ingress to/egress from the dominant landowner’s property, which the servient landowner proposed to pave and open to the public. No ditch easement was at issue; no statute prohibiting encroachment or impairment was at issue. Beiser v. Hensic, 655 S.W.2d 660 (Mo. App. E. Dist. 1983), and Marsh v. Pullen, 623 P.2d 1078 (Ore. App. 1981), are out-of-state cases that involved access roads. No ditch easement *24 was at issue; no statute prohibiting encroachment or impairment was at issue. Hatfield v. Ark. W. Gas Co., 632 S.W.2d 238 (Ark. App. 1982), also an out-of-state case, involved access to a gas line easement, but no statute prohibiting encroachment or impairment was at issue.